Joel E. Tasca
Nevada Bar No. 14124
Holly Ann Priest
Nevada Bar No. 13226
Kyle A. Ewing
Nevada Bar No. 14051
Ballard Spahr LLP
100 North City Parkway, Suite 1750
Las Vegas, Nevada 89106
Telephone: (702) 471-7000
Facsimile: (702) 471-7070
vigila@ballardspahr.com
priesth@ballardspahr.com
ewingk@ballardspahr.com

*Attorneys for PHH Mortgage Corporation*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| PHH Mortgage Corporation<br><br>            Plaintiff,<br><br>vs.<br><br>SFR Investments Pool 1, LLC, a Nevada limited liability company; Centennial Park Homeowners Association, a Nevada non-profit corporation; Andrew E. Cato, an individual<br><br>            Defendants. | CASE NO.  2:16-cv-01648-GMN-CWH<br><br><br><br><br><br><br><br>**REPLY IN SUPPORT OF PHH MORTGAGE CORPORATION'S MOTION FOR JUDGMENT ON THE PLEADINGS OR ALTERNATIVELY FOR SUMMARY JUDGMENT [ECF NO. 29]** |
| SFR Investments Pool 1, LLC, a Nevada limited liability company,<br><br>            Counter/Crossclaimant,<br><br>vs.<br><br>PHH Mortgage Corporation; and Andrew E. Cato, an individual<br><br>            Counter/Crossdefendants. | |

DMWEST #15815196 v2

Plaintiff/counterdefendant PHH Mortgage Corporation ("PHH") submits the following reply in support of its Motion for Judgment on the Pleadings or, Alternatively, for Summary Judgment (ECF No. 29) (the "Motion").[1]

## I. INTRODUCTION

SFR does not dispute that the HOA in this case foreclosed pursuant to a statute that the Ninth Circuit has unequivocally held to be unconstitutional. *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154, 1156 (9th Cir. 2016) ("*Bourne Valley*").  SFR nevertheless claims this Court should extinguish PHH's Deed of Trust based on arguments regarding (1) the so-called "Return Doctrine," (2) actual notice, (3) laches, and (4) standing to enforce the Deed of Trust.  As explained below, these arguments are meritless and have no application to this case.  Accordingly, there is no valid reason to unnecessarily delay judgment in PHH's favor, and the Court should grant PHH's Motion.

## II. THE COURT SHOULD GRANT JUDGMENT IN PHH'S FAVOR

### A. SFR Concedes that *Bourne Valley* Applies as the HOA Foreclosed under the Unconstitutional Statute

SFR does not—and cannot—dispute that *Bourne Valley* applies to this case.  SFR acknowledges that "*Bourne Valley* determined that NRS Chapter 116's '"opt-in" notice scheme' was facially unconstitutional."  Opp. at 2:27-28 (quoting *Bourne Valley*, 832 F.3d at 1156).  Specifically, *Bourne Valley* recognized that the pre-2015 version of NRS Chapter 116.3116 *et seq.* (the "Statute"[2]) "improperly shifted the burden of ensuring adequate notice from the foreclosing homeowners' association to a mortgage lender."  *Id.* at 1159.  Thus, the Statute "facially violated mortgage lenders' constitutional due process rights." *Id.* at 1160.

---

[1] Unless otherwise noted, this Reply uses the defined terms set forth in the Motion.

[2] *Bourne Valley* addressed the version of the Statute that was in effect at the time of the HOA's July 17, 2012 foreclosure sale in this case (the "HOA Sale").

2

This case involves the same unconstitutional Statute. *Bourne Valley* analyzed the version of NRS 116.3116 *et seq.* in effect during a 2012 homeowners' association foreclosure. *Id.* at 1156. This version of the Statute was also in effect at the time of the HOA's July 17, 2012 foreclosure sale in this case (the "HOA Sale"). Moreover, as set forth in SFR's pleading, the HOA in this case foreclosed pursuant to the unconstitutional Statute. *See* ECF No. 15, SFR's Counterclaim, at p. 9, ¶ 3 ("SFR acquired the Property on July 17, 2012, by successfully bidding on the Property at a publicly-held foreclosure auction in accordance with NRS 116.3116 *et seq.*"); *id.* at p. 10, ¶ 7 ("The foreclosure sale was conducted . . . pursuant to the powers conferred by the Nevada Revised Statutes 116.3116, 116.31162-116.31168…"). Thus, PHH is entitled to a declaratory ruling that the HOA foreclosed pursuant to the Statute, which "facially violated [PHH's] constitutional due process rights." *See Bourne Valley*, 832 F.3d at 1160.

## B.   There Is No "Return Doctrine" on which SFR Can Rely to End-Run *Bourne Valley*

Aware that *Bourne Valley* defeats its position, SFR seeks to avoid it by attempting to invoke what it calls the "Return Doctrine." *See* ECF No. 42 at 3:10-11. To be sure, there is no "Return Docrtine." SFR simply presents a hodgepodge of federal and state court cases that share a common result, fails to analyze those cases and their purported application to the facts here, and then brands its collection of string cites a "doctrine," leaving the Court and the Parties to scratch their heads about a fuzzy concept that SFR calls "return."

The result or remedy that SFR calls the "Return Doctrine" warrants some explanation. Sometimes, when a Court is faced with a constitutionally invalidated amendment to a statute, the Court holds that post-invalidation, the version of the statute effective immediately preceding the unconstitutional amendment is revived with respect to conduct that occurs after the statute is declared unconstitutional. *See, e.g.*, *Laroe v. Cassens & Sons, Inc.*, 472 F. Supp. 2d 1041 (S.D. Ill. 2006). This

3

concept is hardly a doctrine; it is simply an approach that has been taken by some courts in constitutional cases.  SFR has done nothing more than fabricate a fancy name for an inapplicable judicial tool in order to confuse and muddle the issues. It asks the Court to use this tool to effectively undermine the substantive holding of a higher court. It circuitously argues that the 9th Circuit's holding that the notice scheme in the 2012 version of NRS 116, *et seq.* <u>violated the due process rights of mortgagees</u> somehow eliminates PHH's ability to argue that its deed could not be extinguished because the notice scheme in NRS 116, *et seq.* <u>violated its due process rights as a mortgagee</u>. This is akin to telling a plaintiff that has established a defendant's liability that because he established the defendant's liability, he no longer has the ability to argue that the defendant is liable. As explained below, this is not a situation in which the Court can legitimately revive a prior version of a statute to afford fair relief. To do so would be to contradict and undermine the holding of the 9th Circuit in *Bourne Valley*.

Reversion to a prior incarnation of a statute is not the remedy of first resort that SFR characterizes it to be.  It is so rarely applied in fact that there is no rule of law for when courts revive a previous version and when they do not.  Rather, reviving a previous version of a statute is one of several tools a Court can employ for fashioning relief after holding a statute unconstitutional. Severance, red lining, and voiding conduct are some of the other options regularly used by Courts.

Because the "Return Doctrine" is not a real doctrine, the Court will not be able to find a previous case in which a court provides any factors to guide whether the remedy envisioned by SFR applies. Nor has SFR suggested any factors to the Court to help it decide whether it applies here.  PHH has reviewed the case law and identified some distinguishing factors that help clarify when reversion to a prior incarnation of a statute might be proper. Courts have revived a pre-amended version of a statute in the following fact-specific scenarios:

- Reviving a previous version of a statute in a declaratory action when the entire purpose of the declaratory action was to challenge

4

the constitutionality of a statute and revive the prior version <u>going forward</u>, *E.g., Clark Fork v. Tubbs*, 380 P.3d 771 (Mont. 2016); *County of Clark by Bd. of County Comm'rs v. Las Vegas*, 628 P.2d 1120 (Nev. 1981);[3]

- Reviving a previous version of a statute when (1) a previous court has already declared the present statute unconstitutional, and (2) the conduct at issue occurred after that previous court's declaration, *E.g., Laroe v. Cassens & Sons, Inc.*, 472 F. Supp. 2d 1041 (S.D. Ill. 2006); *United States v. Tufti*, 542 F.2d 1046 (9th Cir. 1976);[4]

- In rare cases, courts have revived a previous version of a statute to afford relief to the party harmed by the unconstitutional amendment (which, here, would be PHH, not SFR) to govern conduct after the court declared a reversion to the prior statute. *E.g., We the People Nevada v. Miller*, 192 P.3d 1166 (Nev. 2008).

PHH is aware of no court, however, that has revived a previous version of a statute in a situation analogous to this case. Here, the operative notice scheme was implemented in 1993. Approximately twenty years later, the HOA purported to hold a foreclosure sale under NRS 116, *et seq.* Three years after that, the Nevada legislature, recognizing the constitutional flaws of the statute operative at the time of the HOA sale, re-wrote the notice scheme. Another year later, a federal court struck down the pre-2015 amendment iteration of the statute. Now, in 2017, SFR asks this Court to wave its magical gavel and hold that it was actually the original

---

[3] In *Tubbs*, the Montana Supreme Court struck a 1993 amendment to a water act pursuant to a declaratory action by a coalition of parties affected by the 1993 amendment. Recognizing the need for some law going forward in a highly regulated area (water rights), the Montana Supreme Court revived the previous 1987 version. The Montana Supreme Court, however, did not do what SFR is asking this Court to do—apply the 1987 Rule to conduct that had occurred after the unconstitutional 1993 Rule but before it was found unconstitutional, and then strip or grant rights based on a "revived" rule that was not actually in effect at the time of the conduct.

[4] *Laroe* occurred pursuant to the following critical timeline. In 1995, the Illinois legislature enacted the Civil Justice Reform Amendments. *Id.* at 1046 n.1. Two years later, in 1997, the Illinois Supreme Court struck down the 1995 amendments as unconstitutional. *Id.* (noting that the 1995 amendments were "held unconstitutional in [their] entirety by the Supreme Court of Illinois."). The events in Laroe occurred in 2004. *See* 472 F. Supp. 2d at 1044. Thus, at the time the *Laroe* court revived the pre-1995 version of the statute, the entire State of Illinois was already on notice for seven years that the 1995 amendment were unconstitutional (because the amendments were found unconstitutional in 1997 and the conduct giving rise to the action occurred in 2004).

1991 version of the statute that mystically governed HOA liens from behind the shroud of the 1993 amendments for approximately twenty-two years, until the Nevada legislature amended the statute in 2015.[5]

In reality, the HOA obviously did not foreclose under the 1991 version, and it certainly did not announce at its foreclosure sale or in any of its notices that the sale was conducted according to all potentially applicable versions of the statute, as variously amended between 1993 and 2013.  Reviving a prior statute and then retroactively applying this revived law to past conduct – all without any notice thereof – <u>would thus be a second violation of PHH's due process rights</u>.  This is directly <u>in</u>consistent with *Bourne Valley*, flouts principles of due process and fair notice, and would deprive a constitutionally aggrieved party of its opportunity for redress.

### C.   SFR's Remaining Arguments Are Red Herrings

SFR's remaining arguments try to make it appear as if development of facts is necessary before this case may be resolved. Yet, none of the purported facts SFR claims may exist here would affect PHH's entitlement to judgment as a matter of law.

#### 1.   Actual Notice Is Irrelevant to PHH's Facial Challenge

SFR appears to argue that the HOA could unilaterally remedy the Statute's unconstitutional notice scheme by voluntarily giving additional notice beyond that required by Chapter 116.  Opp. at 13:1-15:19.  However, any such additional notice is not relevant to PHH's facial constitutional challenge.  A party can challenge the constitutionality of a statute in two ways: based on the statute's application to the specific facts of a case (i.e., an as-applied challenge) or based on the statute's intrinsic terms, which violated a constitutional right from the day of the law's enactment (i.e., a facial challenge).  *See Ezell v. City of Chicago*, 651 F.3d 684, 698-

99 (7th Cir. 2011); *Seguin v. City of Sterling Heights*, 968 F.2d 584, 589-90 (6th Cir. 1992). Unlike as-applied challenges that must consider the facts of a particular case, for a facial challenge, "individual application of the facts do[es] not matter," and "the plaintiff's personal situation becomes irrelevant. It is enough that we have only the statute itself and the statement of basis and purpose that accompanied its promulgation." *Ezell*, 651 F.3d at 697 (citing *Reno v. Flores*, 507 U.S. 292, 300-01 (1993)).

For these reasons, a facially unconstitutional notice scheme cannot be saved by voluntary, additional notice. In *Wuchter v. Pizzutti*, the U.S. Supreme Court addressed a New Jersey statute which allowed certain plaintiffs to serve out-of-state defendants by leaving process with the New Jersey secretary of state. 276 U.S. 13, 16 (1928). The court held the statute violated due process because it did not reasonably ensure an out-of-state defendant would receive notice of the lawsuit. Id. at 24. The *Wuchter* court noted the defendant "had actual notice by service out of New Jersey into Pennsylvania." *Id*. However, "such notice was not required by the statute. Not having been directed by the statute it can not, therefore, supply constitutional validity to the statute or to service under it." *Id.*; *see also Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449-50 (2008) ("In determining whether a law is facially invalid, we must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases.").

SFR's reliance on Fifth Circuit case law completely ignores the distinction between facial and as-applied constitutional challenges. None of the cases discussed addressed a facial challenge to the statute that gave rise to the subject foreclosure. *See, e.g., United Companies Fin. Corp. v. Mellon Fin. Servs. Corp. No. 7*, 922 F.2d 270 (5th Cir. 1991) ("United does not dispute that notice by mail may be adequate notice . . . but instead argues that it never received the Mellon letter."); *USX Corp. v. Champlin*, 992 F.2d 1380, 1382 (5th Cir. 1993) (considering a

7

declaratory action that specifically sought to uphold a foreclosure sale and extinguish a junior mortgage even through the foreclosing party admittedly failed to notify the junior lienholder); Davis Oil Co. v. Mills, 873 F.2d 774, 787 (5th Cir. 1989) ("Davis maintains that the district court erred in holding that constructive notice was sufficient in this case." (emphasis added)).

Moreover, SFR's general assertion that due process does not require actual notice is irrelevant to this case. See ECF No. 42 at 15:3-10. Whether due process requires actual notice or not does not alter *Bourne Valley*'s conclusion that the Statute is facially unconstitutional because it requires mortgagees like PHH to "opt-in" to receive any notice. See *Bourne Valley*, 832 F.3d at 1158-59. SFR's arguments about actual notice cannot undermine *Bourne Valley*'s binding holding that the Statute under which the HOA foreclosed facially violated due process or limit PHH's consequent right to judgment in its favor. See Section II.A, *supra*.

### 2.  Laches Cannot Preclude a Judgment for PHH

"Laches, an equitable doctrine, may be invoked when delay by one party prejudices the other party such that granting relief to the delaying party would be inequitable." *Besnilian v. Wilkinson*, 117 Nev. 519, 522, 25 P.3d 187, 189 (2001). Thus, laches requires both (1) undue delay, which caused (2) prejudice to SFR. *Id.*; see also State v. *Rosenthal*, 107 Nev. 772, 778, 819 P.2d 1296, 1301 (1991) ("Laches is more than a party delaying the enforcement of his rights; it is delay that works a disadvantage to another."). Moreover, when the statute of limitations has yet to run on a claim, "[e]specially strong circumstances must exist to sustain the defense of laches." *Lanigir v. Arden*, 82 Nev. 28, 36, 409 P.2d 891, 896 (1966); see also *Bratcher v. City of Las Vegas*, 113 Nev. 502, 510, 937 P.2d 485, 490 (1997) (refusing to apply laches where statute of limitations had not run on plaintiff's claim); *Home Sav. Ass'n v. Bigelow*, 105 Nev. 494, 496, 779 P.2d 85, 86 (1989) (recognizing this rule regarding the statute of limitations as "well established"); *Oliver v. SD-3C LLC*, 751 F.3d 1081, 1087 (9th Cir. 2014) (holding laches did not justify dismissing

8

claim where plaintiffs alleged they were injured within applicable limitations period). Neither required element—much less "especially strong circumstances"—is present in this case.

As to timing, PHH filed suit well within the five-year statute of limitations that applies to this quiet title action. NRS 11.070, 11.080; *see also U.S. Bank Nat'l Ass'n v. Woodland Vill.*, 2016 WL 7116016, at *3 (D. Nev. Dec. 6, 2016). The limitations period for a cause of action starts to run "from the day the cause of action accrued. A cause of action 'accrues' when a suit may be maintained thereon." *Woodland Vill.*, 2016 WL 7116016, at *3 (quoting *Clark v. Robison*, 944 P.2d 788, 789 (Nev. 1997)). Here, the earliest time PHH's cause of action for quiet title and declaratory relief against SFR even arguably could have accrued was on July 17, 2012, the date of the HOA Sale by which SFR allegedly obtained title to the Property. Thus, the applicable limitations period does not expire until July 17, 2017. PHH timely filed its claim on July 13, 2016, more than a year before the limitations period expired. *See* ECF No. 1. There is no undue delay in this case.

Nor is there any prejudice to SFR. In the laches context, "[p]rejudice typically means that evidence is no longer available or that the party asserting laches has altered its behavior in reliance on a plaintiff's inaction." *Lyon v. Gila River Indian Cmty.*, 626 F.3d 1059, 1076 (9th Cir. 2010) (internal quotation and alteration omitted). "Difficulties caused by the pendency of a lawsuit, and not by delay in bringing the suit do not constitute prejudice within the meaning of the laches doctrine." *Save the Peaks Coal. v. U.S. Forest Serv.*, 669 F.3d 1025, 1033 (9th Cir. 2012) (internal quotation omitted).

Here, SFR has not—and cannot—suggest that it reasonably relied on the lack of a lawsuit to alter its behavior or lost evidence.[6] SFR claims only that it "cannot

---

[6] On the contrary, a cursory review of the state court dockets demonstrates that SFR has itself filed quiet title actions because it knows that mortgagees dispute the Statute's ability to extinguish their lien interests.

9

DMWEST #15815196 v2

be restored to its original position, i.e., a company never having bid on the Property or spending money on the Property to maintain it." Opp. at 17:10-12. Yet this alleged prejudice derives from the pendency of the lawsuit, not from any delay. SFR would have faced these same issues even if PHH had brought this action within a month of the HOA Sale. Moreover, SFR's argument conveniently ignores the fact that, since the HOA Sale, it has possessed the Property and been able to collect rent even though PHH's Deed of Trust remains in default. If anything, SFR has benefitted from the timing in this case. *See, e.g., Grand Canyon Trust v. Tucson Elec. Power Co.*, 391 F.3d 979, 989 (9th Cir. 2004) (rejecting laches defense where "delay worked to the benefit of [defendant] because it allowed [defendant] the opportunity to recover some or all of its investment…. Indeed, the longer the delay in bringing the suit, the greater the benefit—not the detriment—to [defendant]"). Accordingly, SFR's laches argument cannot prevent judgment in PHH's favor.

### 3. PHH Has Standing

SFR next argues that PHH has not shown proof that it can enforce the Deed of Trust because it is not the original lender and did not produce the note. Further, SFR argues that the note and Deed of Trust split and PHH did not demonstrate Deed of Trust and Note were reunified in order to obtain the relief it has requested. *See* ECF No. 42 at 17-21. PHH does not need to show enforcement of the note or reunification to be afforded relief here for several reasons.

First, SFR relies on two cases to support its argument that "the bank has the burden of proof to demonstrate that both the note and deed of trust were properly transferred to it in order to obtain the declaratory relief it seeks" *See* Response [ECP No. 42] at 17:26-28. Reliance on these cases is misplaced. The cases generally stand for the proposition that in claims for quiet title, the person asserting the claim must prove good title in himself. *See Velazquez v. Mortg. Elec. Registration Sys., Inc*, No. 2:11-CV-576 JCM RJJ, 2011 WL 1599595, at *2 (D. Nev. Apr. 27, 2011); *Breliant v. Preferred Equities Corp.*, 112 Nev. 663, 669, 918 P.2d 314, 318

1  (1996). Neither of the two cases cited by SFR specifically found that a lender like
2  PHH has to demonstrate proper transfer of the note to be afforded declaratory
3  relief. *Id.* Moreover, the Nevada Supreme Court has found that "there is a
4  presumption in favor of the record titleholder." *See Breliant,* 918 P.2d at 318. Here,
5  PHH is the record beneficiary of the Deed of Trust through an assignment and
6  therefore it is presumed that it is the lien holder for purposes of quiet title. *See* ECF
7  No. 29-3 at Ex. 3.
8     Second, in arguing that PHH does not have standing to enforce the note
9  because it was split from the Deed of Trust, all the cases relied on by SFR deal with
10 <u>foreclosure</u>. *See* Response at 17:21 – 19:16; *see also Edelstein v. Bank of N.Y.*
11 *Mellon,* 128 Nev. Adv. Op. 48, 286 P.3d 249, 254 (2012)(a lender must show
12 possession of the note and deed of trust "to enforce an obligation by nonjudicial
13 foreclosure and sale."). Here, PHH is not requesting to enforce the note and deed of
14 trust to conduct a foreclosure. Rather, PHH is requesting that this Court clarify the
15 interests in the property and make a determination on the status of the Deed of
16 Trust. SFR's argument amounts to a request that PHH prove it has the ability to
17 foreclose on the Property before it is even determined if the Deed of Trust survived
18 the HOA Sale.

19     **4.    SFR's FCRP 56(d) Request Should be Denied**

20   Further, to the extent that SFR requests relief under Federal Rule of Civil
21 Procedure ("FRCP") 56(d) to conduct more discovery, such relief should be denied.
22 As an initial matter, there are not facts that could be developed in discovery that
23 would alter the legal reality that SFR conducted the HOA Sale pursuant to an
24 unconstitutional statute, thereby entitling PHH to its requested relief in this
25 matter.
26   Furthermore, under FCRP 56, the party requesting additional discovery is to
27 provide an affidavit or declaration laying our specific reasons for the requested
28 relief. *See* FRCP 56(d). Here, SFR failed to provide a declaration or affidavit.

1 Rather, they make the request in a footnote. Therefore, the Court should not
2 consider the request for additional discovery.

### III. CONCLUSION

For the reasons set forth above and in PHH's Motion, the Court should enter judgment on the pleadings in PHH's favor on: (1) PHH's claims for declaratory relief and quiet title, which seek a determination that the Deed of Trust continues to encumber the Property, and (2) SFR's claims against PHH for declaratory relief/quiet title and preliminary and permanent injunction.

Dated: this 20th day of January, 2017.

BALLARD SPAHR LLP

By: Kyle A. Ewing
Joel E. Tasca
Nevada Bar No. 14124
Holly Ann Priest
Nevada Bar No. 13226
Kyle A. Ewing
Nevada Bar No. 14051
100 North City Parkway, Suite 1750
Las Vegas, Nevada 89106

*Attorneys for PHH Mortgage Corporation*

12

DMWEST #15815196 v2

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5, I hereby certify that, on November 22, 2016, I caused a true and correct copy of the foregoing ***REPLY IN SUPPORT OF PHH MORTGAGE CORPORATION'S MOTION FOR JUDGMENT ON THE PLEADINGS OR ALTERNATIVELY FOR SUMMARY JUDGMENT*** to be made by depositing a copy of same in the United States Mail, postage fully prepaid, addressed to the following and/or via electronic mail through the Court's CM/ECF System electronically served by the Court on all parties in interest:

[ ]   Hand Delivery

[ ]   U.S. Mail, Postage Prepaid

[ ]   Certified Mail, Receipt No. _____
      Return Receipt Requested

[XX]  Via the CM/ECF System and electronically served by the Court upon all counsel set up to receive notice via electronic service in this matter.

Kyle A. Ewing
An employee of BALLARD SPAHR LLP

BALLARD SPAHR LLP
100 NORTH CITY PARKWAY, SUITE 1750
LAS VEGAS, NEVADA 89106
(702) 471-7000 FAX (702) 471-7070

DMWEST #15815196 v2